## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| CLIFFWOOD ELECTRICAL CONTRACTOR, INC. | : | |
| | : | |
| DEBTOR. | : | BANKRUPTCY NO. 09-10587 JHW |

---

| | | |
|---|---|---|
| CLIFFWOOD ELECTRICAL CONTRACTOR, INC. | : | |
| | : | |
| PLAINTIFF, | : | |
| VS. | : | |
| CENTURY GENERAL CONSTRUCTION AND | : | |
| CONTRACTING, LLC, | : | |
| | : | |
| and | : | |
| | : | |
| LAM'S REALTY CORP., | : | |
| | : | |
| DEFENDANTS. | : | ADV. NO. 09-50 SR |
| | : | |

---

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

## Introduction

Before the Court is the motion ("Motion") of defendants, Century General Construction and Contracting, LLC ("Century") and Lam's Realty Corp. ("Lam's Realty"), for summary judgment against plaintiff, Cliffwood Electrical Contractor, Inc. ("Debtor"). Debtor originally filed this action in state court seeking to recover on a mechanics' lien which it filed against Century and Lam's Realty (collectively referred to as "Defendants"). However, Defendants removed the action to this bankruptcy court and filed an answer containing two counterclaims to the Debtor's complaint. Defendants

move for summary judgment on: (1) Debtor's claims; and (2) their counterclaims.

Upon consideration, Defendants' Motion shall be granted on Debtor's claims but denied

as to Defendants' counterclaims.

## **Background**

      Lam's Realty is the owner/franchisee of a ten story hotel located at 1201 Race

Street in Philadelphia (the "Hotel"). *Motion, Exhibit A ¶4*. Century is the owner of a

construction project ("Project") for the Hotel. *Id. ¶3*.  On or about September 19,

2007, Century and Debtor entered into a written agreement (the "Agreement") for

Debtor to complete all remaining electrical work for the Project for the sum of

$240,000. *Motion, Exhibit A ¶¶ 5-7 & Exhibit C; Plaintiff's Memorandum of Law in*

*Objection to Defendants' Motion for Summary Judgment ("Debtor's Opposing Brief"),*

*Exhibit A ¶3.*  According to the Agreement, Debtor was required to complete "all

remaining work for the entire building consisting of the basement, 1st floor, mezzanine,

floors 3, 4, 5, 6, 7, 8, 9 and 10, the mechanical room on the roof of the building and all

exterior electrical work." *Motion, Exhibit C at Article III(2).*

      Article XIV of the Agreement acknowledges that Debtor "is a union contractor."

*Motion, Exhibit C at Article XIV(6).*  Around the time that Century entered into the

Agreement with the Debtor, Defendants learned that the Debtor either had or was

having problems paying its union wages and benefits due to the International

Brotherhood of Electrical Workers – Local 98 ("IBEW Local 98") and to the International

Brotherhood of Electrical Workers – Local 351. *Motion, Exhibit A ¶9.* Consequently,

Century and the Debtor executed an addendum to the Agreement ("Addendum to

Agreement"), dated October 1, 2007, which provided, in pertinent part:

> 1.  Health and Welfare.  [Debtor] and [Century] agree that
> Century shall issue joint checks for I.B.E.W. 98 LABOR for the Project
> payable to the International Brotherhood of Electrical Workers Local 98
> and [Debtor].  The I.B.E.W. Local 98 shall invoice [Century] and [Debtor]
> monthly with all payments due and payable to I.B.E.W. Local 98 in
> accordance with the agreed upon terms of the specific order. The joint
> check is to be delivered to the International Brotherhood of Electrical
> Workers Local 98 located at 1701 Spring Garden Street, Philadelphia,
> Pennsylvania.

*Motion, Exhibit B (Addendum to Agreement) ¶ 1 to Exhibit S (Defendants' Amended*

*Answer).*

Debtor subsequently commenced work on the Project and the progress

payments due under the terms of the Agreement were paid to Debtor.  *Motion, Exhibit*

*A ¶13.*  On October 24, 2007, the parties executed a change order (Change Order #1)

for $25,000 for the Project.  *Id. ¶14 & Exhibit D.*  Century tendered $25,000 to Debtor

for Change Order #1.  *Motion, Exhibit A ¶ 15 & Exhibit E.*

On December 10, 2007, the parties executed a second change order ("Change

Order #2) for $54,0000 whereby Debtor agreed to take over the installation of fire

alarms on for Tech. Security Services.  *Motion, Exhibit A ¶16 & Exhibit F.*  Century paid

Debtor $30,000 of the $54,000 owed to it on Change Order #2. *Motion, Exhibit A ¶ 17*

*& Exhibit G.*

By the end of 2007, Century had paid Debtor $219,000 towards the $240,000

owed under the Agreement and $55,0000 of the $75,000 owed under Change Orders

#1 and #2.  *Motion, Exhibit A ¶ 18.*  From January 7, 2007 through January 27, 2008,

Century paid Debtor an additional $18,000 pursuant to the Agreement, leaving a

3

balance remaining on the Agreement of only $3,000, and paid $38,413.96 in Debtor's

union worker and health benefits.  *Motion, Exhibit A ¶ 19.*

On January 29, 2008, the parties executed an agreement which they labeled

"Addendum to Contract."  *Motion, Exhibit A ¶20 & Exhibit J.*  In the Addendum to

Contract, the parties agreed to the following:

> 1.   Century would make "all payments to IBEW for health and welfare for November 2007 and December 2007."
>
> 2.   From that point forward, Debtor "shall be responsible for payment of health and welfare to the IBEW[.]"
>
> 3.   **Century owed Debtor a balance of $59,202.**
>
> 4.   **The $59,202 was for labor only** and did not include equipment.
>
> 5.   Century would pay Debtor fifty percent (50%) of the $59,202 on January 29, 2008 and the other fifty percent (50%) "at the completion of the electrical work pending approval by the appropriate city officials in Philadelphia."
>
> 6.   Completion included the "original scope of work, fire system, low voltage, and change orders."

*Motion, Exhibit J (emphasis added).*[1]

---

[1]   It is significant that the parties agreed, before the Debtor walked off of the job, that Century owed the Debtor only $59,202 for labor because the mechanics' lien which Debtor filed was for payments due and owing solely for labor and not for any supplies, equipment, etc., furnished for the Project.  *See Mechanic's Lien Claim of Cliff Wood Electrical Contractors, Inc. ("Debtors' Mechanics' Lien Claim"), which is attached*

(continued...)

Pursuant to the Addendum to Contract, Century paid fifty percent (50%) of the $59,202 to Debtor so that under the terms thereof, only $29,601.00 was left due and owing for Debtor's labor. *Motion, Exhibit A ¶¶21-22, Exhibit J & Exhibit K.* In total, Century paid Debtor $321,604 on the Project and paid $38,413.96 in Debtor's union worker and health benefits. Added together ($321,604 + $38,413.96), these amounts total $360,014.96.

Apparently, the Addendum to Contract did not resolve the parties' disagreement concerning what the Debtor was owed because, thereafter, the Debtor made repeated demands to Defendants via letters and phone calls for payment for work that it asserted "had been authorized and completed." *Opposing Brief, Exhibit A ¶ 5.* Defendants did not respond to Debtor's demands. *Id.*

On February 11, 2008, which was thirteen days after the parties had executed the Addendum to Contract, there was a meeting between Debtor and Century. *Motion, Exhibit B at ¶22.* Debtor informed Century that it would terminate the Agreement, as revised, unless Century paid: (i) $12,500 to it in new change orders; (ii) $70,000 to Billows Electrical Supply which was its sub-contractor on the Project; and (iii) additional health and welfare payments to IBEW Local 98. *Motion, Exhibit A ¶ 24.* Debtor made final notice to Defendants for payment on work already completed "with notice of locking-out and tagging-out all incomplete power sources" which "in the ordinary

---

[1](...continued)
*as Exhibit A to Debtor's Complaint on Mechanics' Lien Claim of Cliffwood Electrical Contractor, Inc. ("Complaint").*

course of business" meant that Debtor intended to cease all work on the Project.

*Opposing Brief, Exhibit A ¶ 6.*

The next day, February 12, 2008, Debtor walked off the job site without completing its work on the Project. *Motion, Exhibit A ¶ 27 & Exhibit B ¶ 26.*[2] By letter, dated February 13, 2008, Century informed Debtor of its intention to terminate the Agreement for cause within seven days as a result of Debtor's willful breach thereof and abandonment of the Project. *Motion, Exhibit A ¶28.* On or about July 14, 2008, Debtor filed its Mechanics' Lien Claim in state court against the Hotel for $114,756.00 for "union electrical labor" which Debtor provided for the job. *Motion, Exhibit A ¶ 30.*[3]

---

[2]  According to Debtor, it "completed all the rough electrical work up to and including the eighth floor at the work-site," *Opposing Brief, Exhibit A at ¶4,* but this was not all of the work which it had contractually agreed to do on the Project.

[3]  Paragraph 8 of Debtor's Mechanics' Lien Claim lists the amounts due for "union electrical work."  Paragraph 9 totals the amounts listed in paragraph 8.  These paragraphs state, in part:

> 8.    The work that Claimant provided to the Owner of the Property involved the providing of union labor and services for journeymen electricians and an apprentice electrician on the Project as set forth in the Agreement between the Owner-Contractor, and changes orders thereunder including:
>
> a.    six men providing union electrical labor for the wiring associated with bus duct for a total of 320 hours at a union rate of $95.00 per hour for a total of $30,400.00;
>
> b.    two men providing union electrical labor for the wiring associated with the kitchen branch circuits for a total of 80 hours at a union rate of $95.00 per hour for a total of $7,600.00;

(continued...)

On January 12, 2009, Debtor filed a Chapter 7 bankruptcy case in the United

States Bankruptcy Court for the District of New Jersey.  *Docket Entry No. 1, Case No.*

*09-10587.*  The next day, a Chapter 7 Trustee was appointed in the bankruptcy case.

On February 4, 2009, the Trustee filed a Notice of Assets and Request for Notice to

Creditors.  On January 30, 2009, Century filed a proof of claim in Debtor's bankruptcy

case listing an unsecured claim of $150,000 for breach of contract.  *Claim Register,*

*Claim 3-1, Case No. 09-10587*.

Thereafter, on February 9, 2009, Debtor commenced the state court action by

filing its Complaint to enforce its Mechanics' Lien Claim.  Debtor's state court complaint

contains two counts which are plead in the alternative; in both counts, Debtor demands

---

[3](...continued)

* * *

        g.    two men providing union electrical labor for the wiring associated with installation of the fire alarm for a total of 112 hours at a union rate of $95.00 per hour for a total of $10,636.00; and

        h.    two men providing union electrical labor for the wiring associated with rough electric wiring in guest rooms for a total of 224 hours at a union rate of $95.00 per hour for a total of $21,280.00.

9.    The total amount claimed by Claimant to be due is $114,756.00 together with interest from February 15, 2008, for the union labor and services provided in connection with the Work at the Property ... for which this claim is made herein again the Owner of the Property and in the improvements and the property which are the subject of this Claim.

Mechanics' Lien Claim at ¶¶ 8-9.

judgment for the amount of its mechanics' lien ($114,756.00). In one count, Debtor alleges that it was a contractor on the Project; in the other count, Debtor alleges that it was a subcontractor on the Project.

On February 18, 2009, Defendants filed a Notice of Removal in the Bankruptcy Court for the Eastern District of Pennsylvania, thereby removing the state court action to this Court. *Docket Entry No. 1, Adv. No. 09-50*. Two days later, Defendants filed an answer with counterclaims to the state court complaint. *Id., Docket Entry No. 2*. Shortly thereafter, Defendants amended their answer. *Id., Docket Entry No. 7*.

Defendants included the same two counterclaims in their answer and amended answer; they are: (1) Count I for "breach of contract"; and (2) Count II for "slander of title." Count II is based on Debtor's filing the mechanics' lien against the Defendants.

On April 9, 2009, the Court held a status conference with counsel for the Defendants and the Chapter 7 Trustee. At that conference, the Chapter 7 Trustee advised the Court that he was "appearing pro se" and not as counsel for the bankruptcy estate. *Transcript, dated April 9, 2009, at 3.* He stated that, as of that date, the bankruptcy estate was unrepresented but that he was attempting to retain counsel, who is licensed to appear in the Commonwealth of Pennsylvania, to represent the estate. *Id. at 3-5.* He requested time to retain counsel for the litigation; however the Court opined that his efforts to retain counsel had been "unsatisfactory." *Id. at 6-9.* Seeking to move the litigation forward, Defendants' counsel proposed to the Court that the parties be given 60 days to complete discovery and informed the Court that, during that time, Defendants intended to file a dispositive motion with the Court. *Id. at 4.*

8

Later in the hearing, Defendants' counsel advised the Court that he wasn't sure his

clients even needed discovery because the facts were not really in dispute and stated

again that his clients were going to proceed by filing a motion for summary judgment.

*Id. at 11.*  At the conclusion of the conference, Defendants' counsel specifically

requested, and was granted, permission to proceed with discovery as necessary.  *Id. at*

*11.*

On May 1, 2009, Defendants filed their Motion.  On May 22, 2009, the Chapter 7

Trustee filed a memorandum on Debtor's behalf in opposition ("Opposing Brief") to the

Motion and on May 29, 2009, Defendants filed a reply brief ("Reply Brief").[4]  Shortly

---

[4]    Defendants attached the following items to their Reply Brief: (i) Defendants'
first set of requests for admission to the Debtor; and (ii) an affidavit by Defendants'
legal counsel, Hannah Burrows, averring that: (a) she served the requests for
admission on Debtor and the Chapter 7 Trustee on April 14, 2009; (b) she granted
Debtor's counsel's request for a ten day extension to respond to the requests for
admission, thereby making Debtor's response thereto due on May 25, 2009; and (c) no
response to the requests for admission was received by that date.  *Exhibits A & B to
Reply Brief.*  Because Debtor failed to timely respond to the requests for admissions,
the requests are deemed admitted. *See F.R.Civ.P. 36(a)(3) & (b) which is applicable
herein pursuant to F.R.Bankr.P. 7036.*  As a result, Debtor has admitted that the
following documents are "genuine, authentic and correct" and that they were executed
by the Debtor: (1) the Agreement; (2) Change Order #1; (3) Change Order #2; and (4)
Addendum to Contract.  In any event, "[a]s is true with other material introduced on a
summary judgment motion, uncertified or otherwise inadmissible documents may be
considered by the court if not challenged." *Asousa Partnership v. Smithfield Foods, Inc.
(In re Asousa Partnership)*, 2006 WL 1997426, at *1 n.1 (Bankr. E.D. Pa. June 15,
2006) (*quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice
and Procedure* § 2722, at 384 (1998))*.*

Since Debtor failed to respond to Defendants' Requests for Admission, the
following facts are also deemed admitted: (I) Debtor did not complete its work on the
Project; and (ii) Debtor was paid $360,014.96 for its work on the Project.  However,
Defendants had already established these facts with the affidavits and documents

(continued...)

thereafter, a hearing was held on the Motion.  At the conclusion of the hearing (at

which the parties presented oral argument on the Motion), the Court took the matter

under advisement.

**<u>Discussion</u>**

## I.  Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be

granted if, drawing all inferences in favor of the nonmoving party, "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).[5]  A

motion for summary judgment will not be defeated by the mere existence of some

disputed facts, but will be defeated when there is a genuine issue of material fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A genuine issue exists

when the trier of fact "could return a verdict for the nonmoving party."  *Cooley v.*

*Merski*, 2009 WL 742692, at * 2 (W.D. Pa. March 20, 2009) (*citing Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In deciding a motion for summary judgment, it is not the court's role to weigh

the disputed evidence and decide which is more probative, or to make credibility

---

[4](...continued)
which they submitted in support of their Motion.

[5]  Rule 56 of the Federal Rules of Civil Procedure is applicable hereto pursuant to
Rule 7056 of the Federal Rules of Bankruptcy Procedure.

10

determinations.  *Benchmark Group, Inc. v. Penn Tank Lines, Inc.,* 612 F. Supp.2d 562, 573 (E.D. Pa. April 8, 2009) *(citing Boyle v. County of Allegheny, Pa.,* 139 F.3d 386, 393 (3d Cir.1998) (*citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co. Inc.,* 998 F.2d 1224, 1230 (3d Cir.1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  *Benchmark Group, Inc.,* 612 F. Supp.2d at 573 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*citing U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir.1987)).*  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor."  *Benchmark Group, Inc.*, 612 F. Supp.2d at 573 (*citing Anderson,* 477 U.S. at 255).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corporation v. Catrett,* 477 U.S. 317, 323 (1986).  If the moving party meets its burden, then "the nonmoving party must set forth 'specific facts showing that there is a genuine issue for trial' or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law."  *Zahavi v. The PNC Financial Services Group, Inc..* 2009 WL 904699, at *6 (W.D. Pa., March 31, 2009*) (quoting Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting*

11

Fed.R.Civ.P. 56(e))).

## II. *Debtor's Claims Against Defendants*

*The parties' arguments*

Defendants contend that they should be granted summary judgment on Debtor's

claims against them because Debtor walked off of the Project without completing its

work.   According to Defendants, "[t]he right to a mechanic's lien is triggered by a

subcontractor's completion of its entire scope of work under a subcontract on a project"

and that "[w]ithout the completion of work, no right to a lien, or enforcement thereof,

exists."   Defendants' Memorandum of Law in Support of their Motion for Summary

Judgment ("Defendants' Brief") at 12.

Defendants cite §1502(a) of Pennsylvania's Mechanics' Lien Law of 1963, 49

P.S. §§ 1101 et seq., as support for their position.  This section provides, in pertinent

part:

> (a) **Perfection of Lien.**  To perfect a lien, every claimant
> must:
>
> (1) file a claim with the prothonotary as provided by
> this act within six (6) months <u>after the completion of his
> work</u>; ....

49 P.S. § 1502(a)(1) (underlining added).

Notably, §1503, which lists the information that a claimant must be set forth in a

mechanics' lien claim, also provides support for the proposition that a mechanics' lien

cannot be filed under Pennsylvania law until a claimant's work on a project is complete.

Section 1503 provides:

The claim shall state:

      (1) the name of the party claimant, and whether he files as contractor or subcontractor;

      (2) the name and address of the owner or reputed owner;

      (3) <u>the date of completion of the claimant's work;</u>

      (4) if filed by a subcontractor, the name of the person with whom he contracted, and the dates on which preliminary notice, if required, and of formal notice of intention to file a claim was given;

      (5) if filed by a contractor under a contract or contracts for an agreed sum, an identification of the contract and a general statement of the kind and character of the labor or materials furnished;

      (6) in all other cases than that set forth in clause (5) of this section, a detailed statement of the kind and character of the labor or materials furnished, or both, and the prices charged for each thereof;

      (7) the amount or sum claimed to be due; and

      (8) such description of the improvement and of the property claimed to be subject to the lien as may be reasonably necessary to identify them.

49 P.S. §1503 (underlining added).

In its Opposing Brief, Debtor admits that it walked off of the job before it finished its work but contends that it did so as a "direct result of Defendants breaching first through continued non-payment for work already completed." Debtor's Opposing Brief at 2. Debtor points out that it stopped work on the job only after: (i) making repeated demands on Defendants, which "went unheard," for payment on work that

was authorized and completed; and (ii) notifying the Defendants in writing that it

intended to begin to lock-out and tag-out all incomplete power sources which meant, in

the ordinary course of business, that Debtor intended to cease working on the Project.

Debtor's Opposing Brief at 2. Without citing any authority to support its position,[6]

---

[6] At the hearing on the Motion, the following colloquy ensued regarding the Debtor's position in this matter and the Debtor's lack of authority to support it:

> Counsel: Your Honor, the position of the - - the debtor in this case is that it was constructively thrown off this job. Of course, it admitted that it left without being complete, but it left because it was owed $223,000 and didn't have the funds to continue to pay its employees, wasn't getting the supplies it needed to go forward with the work. So, yes, we did admit that we walked off the job, but we were constructively forced off of the job.
>
> * * *
>
> The Court: Do you contend that that's an exception to the - - the requirement?
>
> Counsel: Yes.
>
> The Court:  - - that the work be completed?
>
> Counsel: Yes, I do.
>
> The Court: Do you have authority for that?
>
> Counsel: Pardon?
>
> The Court: Do you have authority for that?
>
> Counsel: No, I do not have that with me right now, Your Honor.  No, I do not have that, okay.
>
> * * *

(continued...)

14

Debtor argues that the aforementioned facts raise a dispute over a material fact which is "the whole crux of this matter" and, consequently, that Defendants' Motion must be denied. *Id.*

### Analysis of the law

Pennsylvania's Mechanics' Lien Law "is a creation in derogation of the common law, and, therefore, any question of interpretation shall be resolved in favor of strict, narrow construction." *Wyatt Inc. V. Citizens Bank*, ___ A.2d ___, 2009 WL 1557179, at *5 (Pa. Super. June 4, 2009).  In order to effectuate a valid lien claim, a contractor or subcontractor "must be in strict compliance with the requirements of the Mechanics' Lien Law." *Delmont Mechanical Services, Inc. v. Kenver Corporation*, 450 Pa. Super. 666, 672, 677 A.2d 1241, 1244 (1996)**.**  "A mechanics' lien is an extraordinary remedy, which should only be afforded to [claimants] who judiciously adhere to the requirements of the Mechanics' Lien Law, as an aggrieved [claimant] also has an action sounding in breach of contract[.]" *Philadelphia Construction Services, LLC v. Domb*, 903 A.2d 1262, 1267 (2006).   A mechanics' lien is a statutory proceeding for a claimant to obtain in rem rights "'in the nature of collateral security for payment of the debt due for work done or materials furnished' in accordance with a contract, express or implied." *Nowicki Construction Co, Inc. v. Panar Corp. N.V.*, 342 Pa. Super 8, 13,

---

[6](...continued)
> Counsel: I did not research that, and I'm not prepared to address that  - - that issue today.

Transcript, dated June 4, 2009, at 12-13.

492 A.2d 36, 39 (1985) (*quoting Hoffman Lumber Co. v. Mitchell*, 170 Pa. Super. 326,

331, 85 A.2d 664, 667 (1952)).  Importantly, "'[i]t is not designed to afford a sole

means for determining whether the debt is a valid obligation or whether damages may

otherwise lie for breach of contract.'" *Tully Drilling Company, inc. v. Shenkin*, 409 Pa.

Super. 333, 335, 597 A.2d 1230, 1231 (1991) (*quoting Raymond S. Hess, Inc. V.

Kutner*, 13 Pa. D. & C.3d 556, 559 (1978), *aff'd*, 268 Pa. Super. 610, 413 A.2d 1125

(1979)).

　　　　Based on the Court's review of Pennsylvania's Mechanics' Lien Law, we note that

49 P.S. § 1305 recognizes that there are circumstances when a mechanics' lien can be

filed despite the noncompletion of work.  This section states:

> Except in the case of destruction by fire or other casualty,
> where, through no fault of the claimant, the improvement is
> not completed, the right to a lien shall nevertheless exist.

49 P.S. § 1305.   According to the plain language of this section, a claimant can still

have a valid mechanics' lien when an improvement is not completed so long as the

noncompletion is "through no fault of the claimant."  Therefore, the issue which the

Court must resolve is whether there is a genuine dispute as to whether Debtors'

noncompletion of its work was "through no fault" of its own.

***Application of standard of review to determine***
***Whether a genuine issue of material fact exists***

With regard to Debtor's claim against them, Defendants have met their burden by informing the court of the basis of their motion and identifying those portions of the "pleadings, ... admissions on file, together with the affidavits" which demonstrate the absence of a genuine issue of material fact.  Based on the Agreement, the Addendum to Agreement, Change Orders #1 and #2, the Addendum to Contract and the Affidavits which list the amounts paid by Century to Debtor pursuant to the terms of the aforementioned documents, Defendants have established that Century paid Debtor the amounts which the parties agreed Century owed to Debtor as of January 29, 2008. Consequently, in order to oppose the motion for summary judgment, Debtor must set forth "specific facts showing that there is a genuine issue for trial."  Debtor has failed to do so.

In support of its Opposing Brief, Debtor submitted an affidavit consisting of seven paragraphs. In these paragraphs, the affiant merely informs the Court that: (i) Debtor completed all of the rough electrical work up to and including the eighth floor at the work-site; (ii) Debtor made repeated demands to Defendants for work "already authorized and completed" and that such demands went "unreturned by Defendants"; (iii) Debtor made final notice to Defendants for payment on work already complete with notice of "locking-out and tagging-out all incomplete power sources" to which the Defendants did not respond; and (iv) Debtor removed itself from the work-site.   The Affiant provides no facts, specific or general, about the work which the Debtor contends

17

was authorized and for which it asserts it was not paid.  When was the work

authorized?  Who authorized the work? Is there a written agreement memorializing the

authorization for additional work?[7] Why did the Debtor enter into the Addendum to

Contract if it failed to obligate the Defendants to pay for all work which had been

authorized and completed?  Because the only item offered in support of Debtor's

opposition to Defendants' Motion is the aforementioned cursory affidavit, the Debtor

has failed to supply any facts to answer these questions.  In short, the Debtor has

failed to provide specific facts showing that there was work for which it was authorized

and for which payment was due and owing when it walked off of the job.

Consequently, the Debtor has failed to show that there is a genuine issue of material

fact for trial as to whether the noncompletion of work on the Project was "through no

fault" of its own.

### Analysis of Debtor's contention that summary Judgment should Not be granted because the Discovery process is still ongoing

Debtor argues that, because discovery is still ongoing in this adversary

proceeding, "not enough pleadings, depositions, admissions exist" for this Court "to

properly determine the absence of any issue of material fact."  Debtor's Opposing Brief

at 3.  The Court disagrees. The factual record which the Defendants submitted

---

[7]  While not cited by either party, the Court notes that the "Notice of Intention to File Mechanic's Lien" which Debtor attached as Exhibit B to its Mechanic's Lien Claim refers to an "approved change order by supervisor of $166,020.00."  However, there is no mention of such a change order anywhere else in the record.  If such a change order exists, Debtor should have submitted it with its affidavit or at least referred to the change order in the affidavit.

demonstrates the absence of a genuine issue of material fact.  Consequently, Debtor is

obligated, as stated above, to oppose the motion by setting forth specific facts showing

there is a genuine issue for trial.

Moreover, if the Debtor believed that it needed additional discovery to

adequately address and oppose Defendants' Motion, Debtor was required to file an

affidavit pursuant to Rule 56(f) "identifying 'with specificity what particular information

was sought, how, if uncovered, it would preclude summary judgment; and why it has

not previously been obtained.'" *Gaston v. United Postal Service*, 319 Fed. Appx. 155,

159, 2009 WL 692377, at *3 (3d Cir. March 18, 2009) (*quoting Bradley v. United

States*, 299 F.3d 197, 206-07 (3d Cir. 2002) (internal quotation and citation omitted)).

*See also Hill v. Lamanna*, 2006 WL 2433773, at *9 n.9 (W.D. Pa. Aug. 18, 2006) (listing

information which must be contained in Rule 56(f) affidavit) (*quoting Pastore v. Bell

Telephone*, 24 F.3d 508, 511 (3d Cir. 1994).  Debtor did not file such an affidavit.  Its

failure to do so is fatal to its argument that it should be given more time to conduct

discovery before the Motion is decided.  *Connolly v. Reliastar Life Ins. Co., Inc.,* 2006

WL 3355184, at *4 (E.D. Pa. Nov. 13, 2006) (rejecting non-movant's argument that it

would be premature to rule upon motion for summary judgment until she was given an

opportunity to conduct further discovery because non-movant failed to file a Rule 56(f)

affidavit as the rule requires).

### *Summary judgment shall be
### Granted on Debtor's claims*

Since the Debtor has failed to set forth specific facts showing that there is a

19

genuine issue for trial as to whether its noncompletion of work was through no fault of

its own, the factual record will be taken as presented by the Defendants.  That record

shows that Debtor failed to complete its work on the Project as required by

Pennsylvania's Mechanics' Lien Law.  Consequently, Debtor is not entitled to the

remedy of a mechanics' lien and has no right to recover on its claims.

### III.  Defendants' Counterclaims

As noted above, under the law of Pennsylvania, a mechanics' lien is a statutory

proceeding created in derogation of the common law.  Section 1701(c) of

Pennsylvania's Mechanics' Lien Law specifically provides that "[a] setoff arising from the

same transaction or occurrence from which the claim arose may be pleaded but may

not be made the basis of a counterclaim."  49 P.S. § 1701.  Consistent with this

statutory mandate, Rule 1658 of the Pennsylvania Rules of Civil Procedure, which is

applicable to "Actions on Mechanics' Liens," provides:

> Rule 1658.  Set-off.  Counterclaim.
>
> A set-off arising from the same transaction or
> occurrence upon which the claim is based may be pleaded
> as new matter.  No counterclaim may be asserted.

Pa. R. Civ. P. 1658.  Since Defendants are statutorily precluded from asserting their

counterclaims in this proceeding, they are not entitled to judgment on their claims as a

matter of law.[8]

---

[8]  Since Defendants filed a Proof of Claim for $150,000 for breach of contract (to
which they attached, among other items, the Agreement, Addendum to Agreement,
Change Order #1, Change Order #2 and the Addendum to Contract, Defendants may

(continued...)

## IV.  Summary

For the reasons set forth above, Defendants' Motion shall be granted on Debtor's claims against them but denied as to their counterclaims against the Debtor.

By the Court:

_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: <u>July 30, 2009</u>

---

[8](...continued)
pursue relief against the Debtor and/or recover some distribution based on their Proof of Claim in the Debtor's bankruptcy case.